**KERR–McGEE OIL INDUSTRIES, INC.,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent.

No. 5784.

United States Court of Appeals
Tenth Circuit.

Oct. 24, 1958.

Claude H. Mullendore, Jr., (Jack T. Conn, Oklahoma City, Okl., was with him on the brief), for petitioner.

Willard W. Gatchell, Howard E. Wahrenbrock, W. Russell Gorman and William W. Ross, Washington, D. C., on the brief, for respondent.

Before MURRAH, PICKETT and BREITENSTEIN, Circuit Judges.

MURRAH, Circuit Judge.

In this appeal, Kerr-McGee Oil Industries, Inc. seeks to review and set aside an order of the Federal Power Commission, under the Natural Gas Act (Title 15, § 717 et seq. U.S.C.A.) denying its motion for Commission recognition of certain asserted prices for the sale of natural gas by the petitioner as the legally effective rate on June 7, 1954. Petitioner concedes, as it must, that to be legally effective and chargeable, the asserted prices for the sale of the gas must have been the then existing contract rate on June 7, 1954. See F.P.C. Regulations Aug. 6, 1954, §§ 154.91–154.94 (19 F.R. No. 156, pp. 5081–5083).

In 1946, Kerr-McGee entered into a contract with Phillips Petroleum Company for the sale of natural gas to Phillips at certain specified rates. A supplemental agreement provided in substance that if, with other presently immaterial contingencies, the F.P.C. should grant to El Paso Natural Gas Company (the purchaser from Phillips) a general increase in the rates for gas sold by it from the pipeline, the price for gas under the Kerr-McGee-Phillips contract would be increased in ratio to El Paso's increased rate.

In June 1952, El Paso applied to the F.P.C. for an increase of some 22% in the rates for gas sold by it; the increase was suspended and a hearing ordered by the Commission. In January 1953, the suspension order expired, and El Paso put the increased rates into effect under a bond to refund if the Commission ultimately held it unjustified.

Thereafter, while the El Paso rate proceedings were pending before the Commission, Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, brought sales of natural gas by independent producers such as Kerr-McGee under the Natural Gas Act, hence subject to the jurisdiction of the Commission.

In compliance with applicable regulations (F.P.C. Regulations, Aug. 6, 1954, § 154.92), Kerr-McGee in September 1954 filed its rate schedule, consisting of its basic contract with Phillips and supplements thereto, together with an attached billing statement. The billing statement did not, however, reflect any increase under the escalator clause of its contract.

In July 1956, the Commission retroactively approved El Paso's long pending application for increase of resale rates in the amount of about 18% for the period January 1953 to January 1954, and about 22% after January 1954. Kerr-McGee then filed this motion to correct its billing statements to reflect the escalated rate, effective June 7, 1954, based upon El Paso's retroactive increased rate. The Commission denied the motion and rehearing thereon as an attempt to change Kerr-McGee's rate effective June 7, 1954, and set the motion for public hearing under Section 4(d) of the Act, 15 U.S.C.A. § 717(d), and Regulations pursuant thereto.

In Phillips Petroleum Co. v. F.P.C., 10 Cir., 227 F.2d 470, the asserted rate on the critical date (June 7, 1954) was contingent upon ultimate Commission adjudication. We held that it was nonetheless in force and effect under the escalator clause of the contract which prescribed the rate. The asserted rate in that case was being billed and charged, however, on the critical date, and the Commission seeks to distinguish that case from ours on this factual basis. The argument is that in the Phillips case, the Commission and the public were given notice of the asserted rate on the critical date and of the seller's intention to claim the increased rate in the event of ultimate approval, but that by failing to bill and charge the escalated rate until after final adjudication, Kerr-McGee lost whatever right it possessed to assert the increased rate as of the critical date.

■ It is now established beyond doubt that the legally effective rate on June 7, 1954 is not necessarily the rate being billed and charged on that date. It is not the billing and charging which control the effective rate, rather the effective June 7, 1954 rate is one which has accrued by force of the contract as of that date by virtue of the then existing operative facts, whether charged, billed or legally determined. Phillips Petroleum Co. v. F.P.C., 10 Cir., 1958, 258 F.2d 906; Cities Service Gas Co. v. F.P. C., 10 Cir., 255 F.2d 860; Natural Gas Pipeline Co. v. F.P.C., 3 Cir., 253 F.2d 3; Phillips Petroleum Co. v. F.P.C., 10 Cir., 227 F.2d 470. To paraphrase Judge Phillips in the most recent Phillips case, the correct and effective sale price is the price which Kerr-McGee was entitled to receive and Phillips obligated to pay on June 7, 1954, under the terms of their contract. Any other construction of the Regulations would frustrate the purposes of the Act and hinder the Commission in the exercise of its paramount power to adjust the contractual rights of the parties in conformity with ultimate price and rate adjudications.

Nor is billing notice essential to the effective change of the legal rate. By contract, Kerr-McGee's selling price was built into El Paso's price structure. While El Paso's rates were being litigated, the Commission and all parties concerned had knowledge that a rate increase to El Paso meant a price increase to Kerr-McGee. When El Paso's rate increase was ultimately approved retroactively to January 1, 1954, Kerr-McGee thereupon became entitled to charge, and Phillips became obligated to pay, Kerr-McGee's now asserted rate. Indeed, Phillips has acknowledged and discharged its obligation under the contract for sales prior to June 7, 1954, and it stands ready to discharge its obligation for the increased prices on sales subsequent thereto. The escalated rate in no way frustrates the Commission-established rate structure or the contractual rights of the parties thereunder.

■ But the Commission argues finally that the prior escalation under the contract had not accrued as of June 7, 1954 because the contract was so ambiguous as to require negotiations after the critical date to determine the escalated sales price. In other words, the escalator provisions in the contract were not automatic or self-executing. It points out that the contract provided for price increase only upon a "general increase" in El Paso's rates without defining the term "general increase". This contention bears overtones of · Cities Service Gas Co. v. F.P.C., 10 Cir., 233 F.2d 726, where, by the terms of the contract the selling price was subject to adjustment through negotiations after an increase in the field price. We held that since the effective date of the price adjustment came after negotiations and subsequent to June 7, 1954, the adjusted price was subject to Commission approval.

But there was no room for negotiation under our contract. The parties treated it as unambiguously self-executing by its terms, and the Commission inferentially concedes as much. This is the crucial consideration, for even if a dispute had arisen concerning the meaning of the term "general increase", its ultimate resolution would have related back and be-

come effective before the June 7, 1954 critical date.

We hold that the asserted rate was the accrued contract rate on and before June 7, 1954, and that it was the legally effective rate on that date. The order is reversed and the matter remanded for further proceedings before the Commission in accordance with the views herein expressed.