PHILLIPS PETROLEUM COMPANY,
Petitioner,

v.

FEDERAL POWER COMMISSION,
Respondent.

No. 7845.

United States Court of Appeals
Tenth Circuit.

July 22, 1965.

Lewis, Circuit Judge, dissented.

John R. Rebman, Bartlesville, Okl. (Wm. J. Zeman, Lloyd G. Minter, and Kenneth Heady, Bartlesville, Okl., were with him on the brief), for petitioner.

Israel Convisser, Atty., Washington, D. C. (Richard A. Solomon, Gen. Counsel, Howard E. Wahrenbrock, Sol., Leo E. Forquer, Asst. Gen. Counsel, Peter H. Schiff, Atty., Washington, D. C., with him on the brief), for respondent.

Sheldon Rosenthal, Associate Counsel, San Francisco, Cal. (Richard E. Tuttle, Chief Counsel, J. Calvin Simpson, Senior Counsel, San Francisco, Cal., with him on the brief), for intervenors, People of the State of California and Public Utilities Commission of the State of California.

Before PICKETT, LEWIS and SETH, Circuit Judges.

SETH, Circuit Judge.

Phillips Petroleum Company filed this petition pursuant to 15 U.S.C.A. § 717r (b) to review and set aside orders of the Federal Power Commission issued April 3, 1964, and June 10, 1964, in proceeding entitled "In the Matter of

Phillips Petroleum Company," Dockets Nos. G–11217 et al. These orders required the petitioner to refund to El Paso Natural Gas Company a certain principal sum of money together with interest to run until refund be made.

There is no issue as to the amount of the principal sum to be refunded. The dispute has arisen as to whether interest was terminated on February 24, 1964, when petitioner made a purported tender of principal and interest, or whether the interest should be computed until a subsequent tender and acceptance by El Paso Natural Gas Company. This subsequent tender was made by the petitioner on April 8, 1964, following an FPC refund order to do so.

The record shows that the petitioner was a producer and seller of natural gas in interstate commerce, and the amounts here in question arose by reason of its sales to El Paso Natural Gas Company, hereinafter referred to as El Paso. During the previous years, El Paso had filed several separate increases in its rates to its purchasers with the Federal Power er Commission and each was suspended. After the suspension period had expired, the increases were put into effect subject to an obligation to refund in the event the increases were not approved. When the increases in El Paso's rates to its purchasers went into effect, the petitioner was entitled by its sales contracts with El Paso to increase proportionately the rates under which it sold gas to El Paso. As petitioner became contractually entitled to increases in its rates to El Paso by reason of El Paso's increase to its purchasers, it filed increased rates with the Commission pursuant to Section 4(d) of the Natural Gas Act. The Commission suspended such filings, and at the expiration of such suspension period the increased rates went into effect subject to the filing by peti-

tioner of an agreement to refund in the event the Commission by final order directed it to do so.

The proceedings in El Paso's rate increase filings were not terminated in the usual manner, but instead El Paso negotiated a settlement of its rate increases and the Commission approved such settlements with the refunds contemplated therein. As a result of the negotiated settlement El Paso's rates to its suppliers did not reach the level which it had theretofore requested. By reason of such settlement petitioner was not entitled under its contracts to the full increase which it had theretofore put into effect in its sales to El Paso, and consequently El Paso was entitled to be refunded a portion of the increase and was entitled to interest thereon.

Following El Paso's negotiated settlement of its rates to its purchasers, it furnished to the petitioner a computation showing El Paso's estimate of the amount to be refunded to it by the petitioner, together with interest. The petitioner examined these computations and concurred therein. On February 24, the petitioner tendered to El Paso checks totaling the amount of something over five million dollars which represented the principal amount of the refund together with interest through February 29, 1964. With this tender of the checks, four letters were presented for acceptance by El Paso. Two of these letters can be considered as acknowledgment of receipt of the money so tendered; the other two letters contained a listing of the contract prices upon which the settlement had been computed by El Paso and the period during which the rates were in effect. These two letters also contained a statement that it was agreed that the rates therein set forth constituted the proper *contract* rates between the parties.[1] El Paso however refused to accept

---

1. In two of the accompanying letters the new reduced contract rates were tabulated, and the statement followed that the rates so set forth "constitute the proper contract rates * * *."

Two letters asked acknowledgment of payment. They refer to El Paso's computation of refund, and one recites that the amount "covers the total refund to El Paso for the time periods as set forth

the checks and the letters. It appears from the record, as will be hereinafter further discussed, that the reason given by El Paso for this refusal was that it considered it necessary to have an order from the Federal Power Commission before it could accept the refund. There was no question at any time as to the amount of principal, the rate of interest involved, nor that a refund was due.

Shortly thereafter petitioner advised the Commission of the tender, transmitted to the Commission the computations as to the refund and its supplementary rate schedules conformed to the new contract prices as computed by El Paso. Thereafter the Commission entered its order of April 3, 1964, which accepted the filings and required the refunds. In this order the Commission found that petitioner and El Paso had correctly computed the contract rates and required that the petitioner refund the principal amount to El Paso, together with interest computed *until such refund was made.* The petitioner thereafter filed an application for rehearing on the order of April 3, 1964. This was subsequently denied on June 10, 1964, by an order which will be hereinafter discussed.

As indicated above, the dispute as to the amounts of money involved covers only the interest which accrued from February 24, 1964, which was the date that petitioner asserts it made its original and proper tender to El Paso, until petitioner made payment to El Paso on April 8, 1964, following the orders of the Commission.

The Commission in its order of April 3, 1964, stated that it was vested with sole authority to require refunds with interest under Section 4(e), and that a buyer of gas was not obligated to accept a refund from a supplier without such order.

The Commission in its order denying petitioner a rehearing (June 10, 1964) reviewed the contentions of petitioner and made the following statement placing the matter on a somewhat different basis than indicated in its order of April 3, 1964:

"We agree that a seller in a situation like Phillips found itself must have a vehicle for eliminating unnecessary running of interest. This it could have done by tendering payment to El Paso in a manner which clearly would not have forestalled the buyer's rights to secure greater amounts should the Commission so determine. See our order issued today in Trunkline Gas Company v. The Superior Oil Company, Docket No. R164–273 et al. But we think the clear import of the language of the Phillips' letters of February 24 was that the acceptance by El Paso of the tendered checks would finally determine the applicable rates under the various dockets therein referred to and the total refund dollars due to El Paso under those Commission proceedings. In these circumstances El Paso properly refused to accept the refunds on the tendered basis as an attempt to foreclose Commission determination of the proper calculation of refunds, and the alleged tender did not terminate Phillips' interest obligations."

The Commission by the above recognition that a proper tender could have been made by petitioner alone places the issue on the *method* of tender. It urges here that the acknowledgments asked of El Paso as part of the tender were improper, and the tender was properly refused. As set out in the above quotation, the Commission felt that acceptance of the tender with the accompanying letters would finally determine the applicable rates and the total refunds due El Paso. It continued with the characterization of the tender as an attempt to foreclose Commission action. Thus the Commission's argument on this point is basically

therein under such dockets." The other states that it "is in the amount set forth in said tabulation and covers the refund to El Paso for the time periods as set forth therein under such dockets."

that the tender was not a proper one because the letters between the parties which accompanied it would circumscribe the Commission's power as to further refunds, and as to the determination of the proper rates.

The reason given by El Paso at the time it refused the tender on February 24, 1964, was merely that a Commission order was required. In its letters to the Commission of March 13, 1964, relative to the tender, El Paso stated that the matter of rate determination is for the Commission, and recited that it refused the checks from petitioner when tendered with a condition that they were based on "proper contract rates." In this letter El Paso indicated a willingness to accept the refunds to stop the interest if it would not prejudice its position and the Commission "concurs in such procedure." In its "Answer to Motion of Phillips Petroleum Company for Order Terminating Running of Interest," El Paso had asserted that the interest be paid until refund was made "pursuant to an order of the Federal Power Commission." The same reason is recited in Phillips' letter to the Commission dated February 28, 1964. The record thus indicates the reason for El Paso's refusal to accept the tender was that an order was required. This reason is however not one here asserted by the Commission as a reason for refusal because the Commission has said that a proper tender could have been made by petitioner.

The question is raised as to whether the Commission can assert reasons why El Paso could have refused the tender which are different from those given by El Paso at the time of tender or at any other time. We express serious doubts whether the Commission can at all assert defects in the method of performance of the contract between petitioner and El Paso, and especially those which are not and were not raised or in dispute by the contracting parties. However it is not necessary to decide the question because the reasons advanced by the Commission to show an improper tender are not valid. Also even if they were valid, they were not advanced by El Paso at the time of the tender and cannot now be raised.

The Commission, as indicated above, asserts that the tender if accepted with the accompanying letters would have precluded it from further action relative to asserted additional refunds resulting from this refund and from further proceedings in reference to the contract rates. It is however apparent that the contracting parties by agreement could not have excluded the Commission from the exercise of its powers. Thus the recitations in the letters accompanying the checks could not have such a meaning or effect, and the Commission cannot assert this as a reason why the tender was ineffective.

The Commission in its brief describes a series of issues relating to the refund and El Paso's negotiated rate reduction which it considers to be unresolved. These issues are advanced also as a reason why the tender was not valid, but again if they do exist, the parties could not have eliminated them nor resolved them by the tender and its acceptance. These issues can be disposed of by the Commission in due course, but do not present any reason why the tender was not effective. The Commission entered the order here complained of without disposing of these issues by recitations which do no more than recognize a condition which exists regardless of what the contracting parties may have done.

Thus the conditions attached by petitioner to the tender were ineffective to circumscribe the Commission's power, and did not invalidate the tender.

The Commission urges that it had authority over the refund as a Section 4(e) proceeding or by reason of an undertaking filed by petitioner in its original filing for increased rates.

As described above, petitioner was contractually entitled to rate increases proportioned on increases in El Paso's rates, and it so filed each of its increased rates with the Commission. El Paso had previously filed for increases on its sales, the Commission had suspended them for

the five month period and then they had gone into effect subject to possible refunds. Likewise the Commission suspended petitioner's filings and they went into effect subject to refunds. In this connection Phillips filed what is called an "undertaking" whereby it agreed to make refunds as required by final order of the Commission. As described above El Paso negotiated settlement of its rate proceedings which resulted in rates below those in its filings and made refund. These reductions caused the contractual reduction of petitioner's rates to El Paso and the tender here in question was made following El Paso's computation of the amount to be refunded to it. All that took place was the computation made by El Paso under the contract terms with petitioner, the amount was confirmed by petitioner, and the tender was made of this amount with interest including at least the day of tender. The record also shows that the Commission thereafter entered its order here in issue confirming the computation of the refund. There is nothing in the record to indicate that the order was entered by the Commission under Section 4(e) as to petitioner's original rate filings, and no hearing was held on petitioner's rates. The power of the Commission under the Natural Gas Act is to set aside and modify any rate or contract which it finds after a hearing to be unjust, unreasonable, unduly discriminatory, or preferential. This power is to review the contract rates. Section 4(e) of the Act permits retroactive orders by means of refunds, but does not otherwise change the scope or purpose of the review by the Commission. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373. This section also requires a hearing to be had before an order under it may issue. As stressed by the Court in the Mobile case, supra, the initial rate making and rate changing powers of the gas companies remain unaffected, and the integrity of their contracts is preserved. The Court did not there order the Commission to take any action with regard to the refund, but declared as a matter of

law that United was "obligated to make restitution." As we said in Cities Service Gas Co. v. Federal Power Comm'n, 255 F.2d 860, cert. den. 358 U.S. 837, 79 S.Ct. 61, 3 L.Ed.2d 73: "The Act recognizes the rights of the parties to set rates by individual contract and abrogates none of the usual contract rights except for the reviewing powers granted the Commission upon hearing."

With reference to the matter of contract charges or rates, we held in Phillips Petroleum Co. v. Federal Power Comm'n, 258 F.2d 906 (10th Cir.), that:

"* * * While to give effect to the provisions of Paragraph 15(d) [of the contract between the parties] required the ascertainment of facts and the application of the formula to such facts, such facts were readily ascertainable and the obligation of the buyer to pay and the right of the seller to receive such increased price was definitely fixed by the contract. That being the rate fixed by the contract, it could not be changed other than by an order of the Commission after it had found the contract rate to be unlawful in a proceeding under § 5(a) of the Natural Gas Act, or by a proceeding commenced by Phillips for a change in rates, under § 4(d)."

The contract rates are binding on the parties contractually until changed under Sections 4 or 5 of the Natural Gas Act. Phillips Petroleum Co. v. Federal Power Comm'n, 227 F.2d 470 (10th Cir.). See also Amerada Petroleum Corp. v. Federal Power Comm'n, 293 F.2d 572 (10th Cir.), cert. den. 368 U.S. 976, 82 S.Ct. 478, 7 L.Ed.2d 438.

Since there was actually no Commission proceeding under Section 4(e) the terms of petitioner's undertaking entered in the rate increase filings did not become operative. The "undertaking" was no more than a device to simplify the forcing of a refund should compulsion be necessary.

There is and was no issue as to petitioner's contractual authority to file its

increased rates. This same contractual authority or basis in its agreement with El Paso also dictated their reduction and the refund here in issue. United Gas Pipe Line Co. v. Mobile Gas Service Corp., 350 U.S. 332, 76 S.Ct. 373; Phillips Petroleum Co. v. Federal Power Comm'n, 258 F.2d 906 (10th Cir.); Kerr-McGee Oil Industries, Inc. v. Federal Power Comm'n, 260 F.2d 602 (10th Cir.). The refund was required by contract and no party contends otherwise. Since it was so required, El Paso could have commenced legal proceedings to enforce its rights and no regulatory action was required to permit it to do so. It is difficult to see what function the Commission here could have under these circumstances.

The Commission argues that the state minimum price order cases (Natural Gas Pipeline Co. of America v. Harrington, 246 F.2d 915 (5th Cir.); Pan American Petroleum Corp. v. Kansas-Nebraska Natural Gas Co., 297 F.2d 561 (8th Cir.); Northern Natural Gas Co. v. Landon, 212 F.Supp. 856 (Kan.), 338 F.2d 17 (10th Cir.), cert. den. 381 U.S. 914, 85 S.Ct. 1529, 14 L.Ed.2d 435; Pan American Petroleum Corp. v. Superior Court of Del., etc., 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584, and others) are not applicable because none involved a Section 4(e) refund. The orders are apparently not Section 4(e) orders either, but these cases should be considered because the liability on which the actions were based was a contractual one, and not one arising by reason of the Natural Gas Act. The obligation of petitioner here was also contractual and could likewise have been enforced by El Paso. The Commission in its order of April 3, 1964, mentions that petitioner's "rates are subject to further reduction as a contractual matter * * *" and otherwise indicates that the contract determines the amount of the refund.

Since the obligation to refund exists independently of the regulatory processes, and could be enforced in separate legal proceedings, the Commission had no function to perform in connection with the tender here in question and performed none. Its attempt to draw it into the Section 4 proceeding in which no order was entered nor hearing held cannot succeed.

The issues raised by the intervenors are ones collateral to the proceedings, and which appear to have been ruled on in other proceedings. The nature and validity of the contractual provisions the intervenors complain of are not in issue here.

The petitioner during the course of its argument complained of the Commission's failure to terminate proceedings in Docket No. G–11217, but we find no merit in this position.

The respective orders are set aside insofar as they provide for the payment of interest on the refund principal which may have accrued after February 29, 1964, and the cases are remanded to the Commission for further proceedings sufficient to permit the entry of an order requiring the return of the excess interest heretofore paid by petitioner.

LEWIS, Circuit Judge (dissenting).

I must dissent. The impact of the majority decision is a remand to the Federal Power Commission for the purpose of ordering El Paso to refund to Phillips some $26,000. But El Paso is not a party to our action and our review is of an order of the Commission. To me, the reasoning of the majority is self-denying for it both assumes and denies that the order of the Commission is the factor that authorizes, effectuates and determines the amount of the refund. I agree with the analysis set forth in the Commission Order of June 10, 1964 and quoted in my Brother Seth's opinion.