# SKELLY OIL COMPANY, Petitioner,

## v.

# FEDERAL POWER COMMISSION, Respondent.

**Nos. 74–1675, 74–1789 and 75–1203.**

United States Court of Appeals,
Tenth Circuit.

Argued Nov. 10, 1975.

Decided April 5, 1976.

178

Bernard A. Foster, III, of Ross, Marsh & Foster, Washington, D. C., for petitioner.

Steven A. Taube, Atty., Federal Power Commission, Washington, D. C. (Drexel D. Journey, Gen. Counsel, Robert W. Perdue, Deputy Gen. Counsel, and Allan Abbot Tuttle, Solicitor, Federal Power Commission, with him on the brief), for respondent.

Before LEWIS, Chief Judge, and SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is a consolidation of petitions filed by petitioner to review, under 15 U.S.C.

§ 717r(b), orders of the Federal Power Commission which rejected proposed rate increases. The review concerns the Commission policy established in Opinion No. 639 (48 F.P.C. 1299), Opinions Nos. 699 of June 21, 1974, and 699–H of December 4, 1974, generally referred to as the replacement contract policy. The application of this policy was dependent upon the "termination" of the producer's base gas sales contract or to situations where such a contract had "expired of its own terms." This was to be a change from its ceiling rate vintaging system.

By the letter orders of July 17 and September 18, 1974, sought to be reviewed, the FPC refused to approve the rate filings of Skelly for the reason that the base contract covering the deliveries in question had not "expired by its own terms," hence there was not a replacement contract.

The base gas sales contract was dated May 18, 1967, for a twenty-year primary term. It became FPC Gas Rate Schedule No. 228. The parties, petitioner and Lone Star Gas Company, by a letter agreement dated March 13, 1968, amended the base contract to add a paragraph providing that if the gas pressures from the properties covered should drop below the point where delivery would not be possible against the working pressure of Lone Star's gas line, the agreement would terminate as to such properties. This change was filed with the FPC and became Supplement No. 2 to Skelly's Rate Schedule No. 228. Skelly at this time applied for and was granted abandonment by reason of low pressure as to a well from a particular formation which was also within the base contract.

The pressure drop at the wells here concerned continued, and Skelly installed a compressor to permit gas deliveries into the Lone Star line. About two years later, the compressor ceased to function, and deliveries to Lone Star ceased. This took place on September 13, 1973. Skelly suggested to Lone Star that the contract had expired under the pressure clause referred to above, and Lone Star agreed that it had. Lone

Star, however, agreed to itself install compression equipment, and to buy the gas under a new arrangement based on compression by the purchaser. This was done, and deliveries of gas were resumed some 109 days after they had stopped as above described.

Skelly applied for a rate increase based on the replacement contract theory, but it was refused by the Commission. Subsequent requests were likewise denied and Skelly petitioned for review. As indicated above, these denials were based on the conclusion of the Commission that the base contract had not expired of its own terms. Thus the basic issue on this review is the matter of contract expiration.

The Commission does not challenge the validity of the amendment of the base contract to insert the pressure clause. It is a typical provision. See Williams, Oil & Gas Law, § 741.1, p. 831. Also there is no assertion that the pressures were in any way controlled by the parties for the purpose of bringing the pressure clause into operation. Thus it became operative by the change in events beyond the control of the parties.

Thus under the record before us, the pressure clause was to be triggered by the existence of physical facts—the relationship of line pressure to the pressure of the gas sought to be introduced into the line. This pressure comparison was capable of objective measurement, or was demonstrated by the physical performance of the gas. Obviously it was a very practical and significant factor to the seller and the pipeline company. Thus we are not concerned with a subjective decision or agreement to terminate the contract as was the case in *Mobil Oil Corp. et al.,* 49 F.P.C. 239 (1973), where the parties decided to add additional acreage. In the cited case, there was a base contract with no provision for termination short of the primary term. The same may be said of the references in Opinion No. 699–H. Thus on this record the pressure clause became operative by reason of conditions as to deliverability not within the control of the parties.

■ We must conclude that the pressure clause did as a matter of contract law become operative to terminate the base contract by its own terms. The facts and the contract are before us as considered by the FPC. The Commission held no hearings. This is a matter of ordinary contract law, a Williston-Corbin problem, and, as we consider this petition, nothing more than that. The Natural Gas Act does not alter the ordinary contractual relationships. *United Gas Pipe Line Co. v. Mobile Gas Service Corp.,* 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373; *Phillips Petroleum Co. v. Federal Power Comm'n,* 349 F.2d 535 (10th Cir.). *See also* the termination in *Gulf Oil Corp. v. American Louisiana Pipe Line Co.,* 282 F.2d 401 (6th Cir.). We considered the measure to be applied to ordinary legal issues in *Warren Petroleum Corp. v. Federal Power Comm'n,* 282 F.2d 312 (10th Cir.), and there said:

"At the outset, the Commission urges that its interpretation of the 'favored-nation' clause as to the rate provision is a matter peculiarly within its competence, and that judicial review is limited to considering only whether the Commission's determination is reasonable. Its brief states: ' * * * The Commission is far better equipped than reviewing courts to interpret and evaluate the natural gas purchase contracts which are not only essential to the business but which, in the case of independent producers, themselves usually constitute the rate schedules required to be filed with the Commission.' This rule has no application in the instant case. It is quite apparent that the Commission's refusal to accept the rate filing was based upon its construction of the contract provisions and the application of ordinary principles of contract law, and not upon its experiences in the administration of the Natural Gas Act. The identical question was recently answered contrary to the contention of the Commission in *Texas Gas Transmission Corp. et al. v. Shell Oil Co.,* 363 U.S. 263, 268, 80 S.Ct. 1122, 1126, 4 L.Ed.2d 1208, where it was said: (Quotation omitted)."

*See also* "ordinary rules of contract law" in *Texas Gas Transmission Corp. v. Shell Oil Co.,* 363 U.S. 263, 80 S.Ct. 1122, 4 L.Ed.2d 1208. *See* 13th Annual Institute on Oil and Gas, p. 126, p. 142 et seq., p. 180. Professor Corbin in Corbin, Contracts, §§ 739, 740, and 741, describes "conditions" expressed in contracts. The example in section 741 demonstrates how the existence or nonexistence of a fact not within the control of the parties, when properly expressed, controls the performance. The example concerns a sale of oil but from a somewhat different era. The pressure clause here concerned is a typical condition under the Corbin definition. This would seem to be sufficient authority coupled with a usual legal interpretation of the contract. As to the treatise by Professor Corbin, it has been pointed out that one example of impossibility of performance stated by him in section 1325 has been now outdated, but this would not seem to be sufficient reason to refuse to follow the "condition" examples.

The FPC has not yet construed its replacement contract policy to require that all base contracts must run their full primary terms regardless of provisions for termination for conditions beyond the control of the parties short of such period as here concerned. Also this position was not advanced by the Commission as a basis for its decision. The basis expressed in the orders controls. *See Federal Power Comm'n v. Texaco,* 417 U.S. 380, 94 S.Ct. 2315, 41 L.Ed.2d 141.

The Commission decided that the base contract did not expire by its own terms by reason of the operation of the pressure clause. We conclude, however, that the contract did so expire as a matter of ordinary contract law. This is the only issue which we do decide. Also we do not decide how this determination may relate to other issues raised or other factors. Thus the matter must be further considered in the Commission.

The letter orders are set aside for the single reason above described and the case is remanded to the Federal Power Commis-

sion for such further proceedings as it deems necessary.