## PAN AMERICAN PETROLEUM CORP. *v.* SUPERIOR COURT OF DELAWARE FOR NEW CASTLE COUNTY ET AL.

No. 80.   Argued April 18–19, 1961.—Decided May 29, 1961.*

*Byron M. Gray* argued the cause for petitioner in No. 80.   With him on the briefs were *Hugh M. Morris, James M. Tunnell, Jr., William J. Grove, Carroll L. Gilliam* and *W. W. Heard.*

---

*Together with No. 81, *Texaco, Inc.,* v. *Superior Court of Delaware for New Castle County et al.,* also on certiorari to the same Court.

*Paul F. Schlicher* argued the cause for petitioner in No. 81. With him on the briefs were *John J. Wilson, Frank H. Strickler, James M. Tunnell, Jr.* and *Andrew B. Kirkpatrick, Jr.*

*Charles V. Wheeler* argued the cause for the Cities Service Gas Co., respondent in both cases. With him on the brief were *Conrad C. Mount, Jack Werner, Howard L. Williams, Harry S. Littman* and *John T. Grant.*

Briefs of *amici curiae,* urging affirmance, were filed by *J. Weston Miller* and *Mayte Boylan Hardie* for certain municipalities which are political subdivisions of the States of Kansas and Missouri, and by *James Lawrence White, John Fleming Kelley* and *Lewis M. Poe* for the Colorado Interstate Gas Co.

MR. JUSTICE FRANKFURTER delivered the opinion of the Court.

This case presents for review the judgment of the Supreme Court of Delaware denying a petition for a writ of prohibition to prevent further proceedings before the Superior Court of the State of Delaware, in and for New Castle County, in actions by Cities Service Gas Company against petitioners involving contracts for the sale of natural gas by petitioners to Cities Service. The claim of petitioners is that the Natural Gas Act, 52 Stat. 821, as amended, 15 U. S. C. § 717 *et seq.,* has deprived state courts of jurisdiction over the subject matter of these cases. The sole question, both below and here, is whether the state courts had jurisdiction.[1] The impor-

---

[1] It is apparent from the opinion of the Delaware Supreme Court that this was the only question decided there. See also *Clendaniel* v. *Conrad,* 26 Del. 549, 598, 83 A. 1036, 1052.

"The writ of prohibition . . . issues only from a superior court to an inferior court, tribunal or judge, and only for the purpose of

tance of the problems thereby raised justified their disposition here, so we granted the petition for certiorari. 363 U. S. 818.

Cities Service is a natural gas pipeline company. Petitioners are producers of natural gas. Cities Service purchases natural gas from petitioners and transports it through its pipelines, in interstate commerce, for sale to local distributing companies. During the period 1949–1951 Cities Service entered into contracts for the purchase of natural gas produced by petitioners from the Hugoton Field in Kansas. In each instance the price agreed upon was less than eleven cents per thousand cubic feet (Mcf) measured on a pressure base of 14.65 pounds per square inch absolute (psia).

On December 2, 1953, the Corporation Commission of the State of Kansas promulgated an order, to take effect on January 1, 1954, fixing a minimum price of eleven cents per Mcf on a pressure base of 14.65 psia for gas taken from the Kansas Hugoton Field. The effect of this order was to require Cities Service to pay petitioners at a higher rate than those specified in the pre-existing contracts. Cities Service brought suit in the Kansas courts to obtain judicial review of the order.

On January 21, 1954, Cities Service advised each of the petitioners by letter of the Kansas minimum-rate order and of its suit for judicial review of that order, adding the following:

> "Pending final judicial determination of the said Order and beginning January 1, 1954, Cities Service Gas Company intends to pay for all gas purchased by it in the Kansas Hugoton Field in strict compliance with the terms and conditions of the said Order.

---

keeping such inferior court within the limits of its jurisdiction. That is the sole purpose of the writ."

Accord, *Knight* v. *Haley,* 36 Del. 366, 374, 176 A. 461, 464; *Canaday* v. *Superior Court,* 49 Del. 332, 338–339, 116 A. 2d 678, 681–682.

Such compliance with said Order by this Company, however, is made to avoid the penalties and actions provided by the Kansas statutes for a violation thereof, and the payments made to you in compliance with said Order pending its final judicial determination are to be considered and accepted by you as involuntary payments on our part, without prejudice to our rights in said litigation, and in no event as an acquiescence by us in the validity of said Order.

"In the event the said Order is finally judicially modified or declared to be invalid in whole or in part, as a result of which you have been overpaid for gas purchased during the interim aforesaid, Cities Service Gas Company will expect you to refund to it the amount of said overpayment."

Thereafter, each voucher check sent by Cities Service to petitioners in payment for gas purchased bore a notation stating that it was tendered "subject to provisions" of the January 21, 1954, letter. Petitioners cashed these checks without objection to the conditions of their tender. Petitioner Pan American Petroleum Corporation (formerly Stanolind) wrote in reply to the Cities Service letter of January 21:

"We construe the last paragraph of said letter to mean that Cities will expect Stanolind to refund to it the amount of over-payments, if any, without any interest thereon should the said Order of December 2, 1953 be finally judicially modified or declared to be invalid in whole or in part by an adjudication which would be binding and controlling on Stanolind. We will, therefore, accept payments on this basis."

Petitioner Texaco, Inc., acknowledged receipt of Cities Service's payment of February 25, 1954, by a letter dated March 2, 1954, without objection to the conditions of payment.

On June 7, 1954, this Court, in *Phillips Petroleum Co.* v. *Wisconsin,* 347 U. S. 672, held that the jurisdiction of the Federal Power Commission extended to "the rates of all wholesales of natural gas in interstate commerce, whether by a pipeline company or not and whether occurring before, during, or after transmission by an interstate pipeline company." 347 U. S., at 682. Following the *Phillips* decision, the Commission, in accordance with the provisions of the Natural Gas Act, on July 16, 1954, issued an order requiring independent producers to file with the Commission rate schedules setting forth the terms and conditions of service and all rates and charges for transportation or sales effective on June 7, 1954. "Rate schedule" was defined to mean "the basic contract and all supplements or agreements amendatory thereof, effective and applicable on and after June 7, 1954 . . . ." 18 CFR, 1960 Cum. Supp., § 154.93. In compliance with the Commission's directive, petitioner Texaco filed the basic contract between it and Cities Service, an amendatory letter, sample billing statements, the Kansas minimum-rate order, and the Cities Service letter of January 21, 1954. Petitioner Pan American filed its basic contract with Cities Service, a number of supplemental letters and agreements (not including the letter of January 21, 1954), a sample billing, and the Kansas order. With reference to that order, Pan American explained that it had been upheld by a court of competent jurisdiction and that therefore the gas sales contract had "in effect" been "amended thereby."

On December 8, 1956, the Supreme Court of Kansas sustained the validity of the Kansas Corporation Commission's minimum-rate order, *Cities Service Gas Co.* v. *State Corporation Comm'n,* 180 Kan. 454, 304 P. 2d 528, but on January 20, 1958, that decision was reversed here, *Cities Service Gas Co.* v. *State Corporation Comm'n,* 355 U. S. 391.

In complaints filed in the Superior Court of Delaware in June of 1958, Cities Service set forth the original contracts between the parties, the Kansas minimum-rate order and its bearing on the contractually determined prices, the letter of January 21, 1954, the voucher checks, other relevant correspondence, and this Court's reversal of the Kansas Supreme Court's decision upholding the order's validity. On the basis of these allegations Cities Service sued for overcharges by Texaco in the sum of $412,995.95 and Pan American of $10,324,468.67, paid under compulsion of the Kansas order for gas purchased at rates higher than those stipulated by contract. After intermediate procedural steps, the defendants moved for summary judgments, which were denied. There followed this petition for a writ of prohibition, attacking the jurisdiction of the Superior Court to entertain the actions brought by Cities Service.

The Supreme Court of Delaware sustained the jurisdiction of the Superior Court over these causes, stating that the claims of Cities Service "are not founded upon any liability *created* by the Natural Gas Act, but upon a private contract deriving its force from state law." (Emphasis in the original.) *Columbian Fuel Corp.* v. *Superior Court,* 52 Del. ——, ——, 158 A. 2d 478, 482.

> "It is certainly true that the adjudication of these claims does entail an examination of the provisions of the Natural Gas Act, the regulations of the Commission, and the applicable federal decisions. But these have been brought into the cases by way of defense to complaints which, on their face, are based on nothing more than contracts to refund amounts measured by the contract or 'filed' rate and the rate fixed by the Kansas order. The general rule is that in such a case the plaintiff's suit is not one arising under federal law. . . ." 52 Del., at ——, 158 A. 2d, at 483.

The argument against this conclusion runs as follows. Under the Natural Gas Act the prices to be paid for natural gas sold wholesale in interstate commerce must be in accordance with the rates filed with the Federal Power Commission. Since the suits instituted by Cities Service involve rates so filed, they must either be to enforce a filed rate or to challenge a filed rate. If the former, they are subject to § 22 of the Act, which provides, for present purposes, that "The District Courts of the United States . . . shall have exclusive jurisdiction of violations of this [statute] or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of, this [statute] or any rule, regulation, or order thereunder." 52 Stat. 833, 15 U. S. C. § 717u. If the latter, they lie within the purview of § 19 of the Act, which provides for review of Commission orders in the United States Courts of Appeals. 52 Stat. 831, 15 U. S. C. § 717r. In either case, the state courts are deprived of jurisdiction.

But questions of exclusive federal jurisdiction and ouster of jurisdiction of state courts are, under existing jurisdictional legislation, not determined by ultimate substantive issues of federal law. The answers depend on the particular claims a suitor makes in a state court— on how he casts his action. Since "the party who brings a suit is master to decide what law he will rely upon," *The Fair* v. *Kohler Die & Specialty Co.*, 228 U. S. 22, 25, the complaints in the Delaware Superior Court determine the nature of the suits before it. Their operative paragraphs demand recovery on alleged contracts to refund overpayments in the event of a judicial finding that the Kansas minimum-rate order was invalid, or for restitution of the overpayments by which petitioners have allegedly been unjustly enriched under the compulsion

of the invalid Kansas order. No right is asserted under the Natural Gas Act.

The suits are thus based upon claims of right arising under state, not federal, law. It is settled doctrine that a case is not cognizable in a federal trial court, in the absence of diversity of citizenship, unless it appears from the face of the complaint that determination of the suit depends upon a question of federal law. See, *e. g., Skelly Oil Co.* v. *Phillips Petroleum Co.*, 339 U. S. 667, 672, and cases cited. Apart from diversity jurisdiction, "a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. . . . and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. . . ." *Gully* v. *First National Bank*, 299 U. S. 109, 112–113.

For this requirement it is no substitute that the defendant is almost certain to raise a federal defense. See *Skelly Oil Co.* v. *Phillips Petroleum, supra; Gully* v. *First National Bank, supra;* and authorities cited in those cases. Equally immaterial is it that the plaintiff could have elected to proceed on a federal ground. *Henry* v. *A. B. Dick Co.*, 224 U. S. 1, 14–17. If the plaintiff decides not to invoke a federal right, his claim belongs in a state court.

The rights as asserted by Cities Service are traditional common-law claims. They do not lose their character because it is common knowledge that there exists a scheme of federal regulation of interstate transmission of natural gas. What was said in *Gully* v. *First National Bank*, 299 U. S., at 116, is apposite:

"We recur to the test announced in *Puerto Rico* v. *Russell & Co., supra*: 'The federal nature of the right to be established is decisive—not the source of the authority to establish it.' Here the right to be estab-

lished is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. *Louisville & Nashville R. Co.* v. *Mottley, supra.* With no greater reason can it be said to arise thereunder because permitted thereby."

We are not called upon to decide the extent to which the Natural Gas Act reinforces or abrogates the private contract rights here in controversy. The fact that Cities Service sues in contract or quasi-contract, not the ultimate validity of its arguments, is decisive.

Nor does § 22 of the Natural Gas Act help petitioners. "Exclusive jurisdiction" is given the federal courts but it is "exclusive" only for suits that may be brought in the federal courts. Exclusiveness is a consequence of having jurisdiction, not the generator of jurisdiction because of which state courts are excluded. This was settled long ago in *Pratt* v. *Paris Gas Light & Coke Co.,* 168 U. S. 255, a case involving a grant of exclusive jurisdiction to the federal courts in all cases arising under the patent laws. Suit was brought in a state court on a common-law contract claim. The complaint contained no mention of a patent, but the invalidity of certain patents was set up in defense. In response to the argument that this deprived the state courts of jurisdiction, the Court said:

"Section 711 [the jurisdictional provision] does not deprive the state courts of the power to determine *questions* arising under the patent laws, but only of assuming jurisdiction of *'cases'* arising under those laws. There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening plead-

ing—be it a bill, complaint or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals." (Emphasis in the original.) 168 U. S., at 259.[2]

Petitioners contend that to permit the state courts to entertain the suits brought by Cities Service will jeopardize the uniform system of regulation that Congress established through the Natural Gas Act. Apart from other considerations that dispel such fears, it should be remembered that the route to review by this Court is open to parties aggrieved by adverse state-court decisions of federal questions. In *Great Northern R. Co.* v. *Merchants Elevator Co.*, 259 U. S. 285, the question before the Court was whether not merely the state courts but any court had jurisdiction to construe a tariff prior to consideration of the disputed question of construction by the Interstate Commerce Commission. It was argued in that case, as it is argued here, that to permit entry into the courts, without initial resort to the Commission, would destroy essential uniformity. The answer there given by Mr. Justice Brandeis, speaking for the Court, applies here:

"This argument is unsound. It is true that uniformity is the paramount purpose of the Commerce Act. But it is not true that uniformity in construc-

---

[2] The foregoing conclusions are not affected by want of explicit limitation to jurisdiction "arising under" the Natural Gas Act. Such limitation is clearly implied, as the authoritative Committee Reports indicate. "This section [referring to § 22] imposes appropriate jurisdiction upon the courts of the United States over cases arising under the act." H. R. Rep. No. 709, 75th Cong., 1st Sess., p. 9; S. Rep. No. 1162, 75th Cong., 1st Sess., p. 7.

tion of a tariff can be attained only through a preliminary resort to the Commission to settle the construction in dispute. Every question of the construction of a tariff is deemed a question of law; and where the question concerns an interstate tariff it is one of federal law. If the parties properly preserve their rights, a construction given by any court, whether it be federal or state, may ultimately be reviewed by this court either on writ of error or on writ of certiorari; and thereby uniformity in construction may be secured. Hence, the attainment of uniformity does not require that in every case where the construction of a tariff is in dispute, there shall be a preliminary resort to the Commission." 259 U. S., at 290–291.

We hold that the state courts of Delaware do have jurisdiction to hear and decide the claims that Cities Service has formulated.

*Affirmed.*