**NORTHERN NATURAL GAS COM-PANY, a Corporation, Plaintiff,**

v.

**Alf M. LANDON, an Individual, Defendant.**

**No. T-2166.**

United States District Court
D. Kansas.

Sept. 7, 1961.

Lawrence I. Shaw, F. Vinson Roach, John T. Grant and Patrick J. McCarthy, Omaha, Neb., Cosgrove, Webb & Oman, Topeka, Kan., for plaintiff.

Byron M. Gray, Topeka, Kan., for defendant.

ARTHUR J. STANLEY, Jr., Chief Judge.

This is an action for the recovery of alleged overpayments to the defendant, Alf M. Landon, for natural gas produced from the Hugoton Field in Kansas and purchased from the defendant by the plaintiff. The action is based on an alleged contract to refund the overcharges and on a theory of restitution. The defendant has counterclaimed for claimed deficiencies in payments to him after plaintiff ceased paying the overcharges.

The parties have stipulated as to the facts and have submitted the matter to the court for decision on the merits based on the pleadings and stipulation of facts, the court reserving for later determination the issue as to the amount, if any, due from either party to the other.

Prior to January 1, 1954, the plaintiff, Northern Natural Gas Company, hereinafter called Northern, entered into several contracts to buy natural gas from Landon at prices of four cents and five cents per Mcf (thousand cubic feet) measured at 16.4 pounds p. s. i. a. (per square inch absolute).

On December 2, 1953, the Kansas Corporation Commission ordered the imposition of a minimum price of eleven cents per Mcf at 14.65 pounds p. s. i. a. The order became effective January 1, 1954. Northern notified Landon by letter dated February 23, 1954, that the eleven-cent price would be paid, but under protest and involuntarily. Also that, should the minimum price be declared invalid in judicial proceedings, the additional amount paid was to be refunded. Other similar letters were sent in 1955 and 1958.

Northern paid for its gas purchases monthly. On every check issued for gas bought during the period in question Northern wrote the following endorsement:

"Endorsed and accepted subject to conditions of a letter dated Feb. 23, 1954 received by payee from payor pertaining to the wellhead price order of the Kansas Commission dated Dec. 2, 1953."

After the 1955 and 1958 letters from Northern, the endorsements mentioned them also. Landon cashed these checks without objection.

On June 7, 1954, the United States Supreme Court rendered its decision in Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035. It was therein held that the Natural Gas Act included regulation of independent producers such as Landon. Pursuant to this decision, the Federal Power Commission required Landon to file, as "rate schedules," his existing contracts for the sale of gas. In response to the Commission's inquiry as to why eleven cents was being charged when the contracts provided for four cents and five cents, Landon filed a copy of the Kansas Cor-

poration Commission's minimum price order.

The F. P. C. accepted these "rate schedules" for filing by letters each of which contained the following statement:

"This acceptance for filing shall not be construed as a waiver of the requirements of Section 7 of the Natural Gas Act, as amended; nor shall it be construed as constituting approval of any rate, charge, classification, or any rule, regulation or practice affecting such rate or service contained in the rate filing; nor shall such acceptance be deemed as recognition of any claimed contractual right or obligation associated therewith; and such acceptance is without prejudice to any findings or orders which have been or may hereafter be made by the Commission in any proceeding now pending or hereafter instituted by or against your company."

Only one change has subsequently been made in the rate schedules. This was in 1957, when the rate was raised to 11.055 cents to reflect Northern's share of a severance tax imposed by the Kansas legislature. Northern was obligated by one of the contracts with Landon, entered into prior to January 1, 1954, to pay one half of any such taxes imposed. By agreement with Landon, Northern continued to pay eleven cents and remitted the .055 cent tax directly to the State of Kansas. The severance tax was declared void by the Kansas Supreme Court in January, 1958. State ex rel. Dole v. Kirchner, 182 Kan. 437, 321 P.2d 183 (formal opinion, 182 Kan. 622, 322 P.2d 759). Also in January, 1958, the Supreme Court of the United States held unconstitutional and void *ab initio*, the minimum price order of the Kansas Corporation Commission. Cities Service Gas Co. v. State Corp. Comm., 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed.2d 355.

Thereafter, on March 24, 1958, Northern notified Landon that it would pay four cents and five cents as per the original contracts, for all gas purchased after February 1, 1958. Northern next, on July 31, 1958, made demand for refund of the "excess" payments which Landon refused. This suit ensued.

Defendant raises the question of this court's jurisdiction, alleging that the plaintiff cannot collaterally attack the F. P. C. order which accepted the eleven-cent rate. The plaintiff should first, says defendant, exhaust its administrative remedies and then appeal for review of the order. The Natural Gas Act gives exclusive jurisdiction to the United States Courts of Appeal where review of an F. P. C. order is sought. 32 Stat. 831, 15 U.S.C.A. § 717r. A similar jurisdiction question has been considered recently by the United States Supreme Court. Pan American Petroleum Corp. v. Superior Ct., 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961). In the Pan American case, the plaintiff sued to recover overcharges paid to a gas producer pursuant to the Kansas Corporation Commission's eleven cents minimum rate order. The court said that jurisdiction depends on how the plaintiff "casts his action," not on "ultimate substantive issues of federal law." In other words, since plaintiff demanded recovery based on alleged contracts for refund, a traditional common law claim, and not on the Natural Gas Act, a federal law claim, he invoked the state court's jurisdiction.

█ The present case is in this court by virtue of diversity of citizenship. It could not have been brought here as a claim or right arising under an Act of Congress regulating commerce as provided in 62 Stat. 931, 28 U.S.C.A. § 1337. See Pan American Petroleum Corp. v. Cities Serv. Gas Co., 182 F.Supp. 439 (D.Kan.1958). Therefore, this court is vulnerable to the same jurisdictional objection as was the Delaware court in Pan American Petroleum Corp. v. Superior Ct., supra. The present plaintiff casts its complaint in the form of an action on contract and for restitution. It does not mention the Natural Gas Act except to identify itself as a "gas company" as defined therein. The present

case is well within the holding of Pan American Petroleum Corp. v. Superior Ct., supra. This court has jurisdiction.

■ The next question to be considered is: What is the proper rate for gas purchased from January 1, 1954, to January 31, 1958, the period during which the Kansas Corporation Commission order had its spurious existence?

Prior to January 1, 1954, the rate or price was governed solely by the contracts. The contracts of course were subject to applicable laws. Consequently, when the Kansas Corporation Commission issued its minimum price order, the contract was modified and the rate increased to eleven cents per Mcf. This order was later held to be a nullity by the United States Supreme Court. If the order was a nullity, the modification was likewise. If nothing further had occurred, the proper rate would clearly be four cents and five cents.

After the United States Supreme Court ruled that independent producers such as Landon should be regulated under the Natural Gas Act, Phillips Petroleum Co. v. Wisconsin, supra, the F. P. C. issued orders requiring producers to file "rate schedules." These schedules were defined by the order as the "basic contract and all supplements or agreements amendatory thereof, effective and applicable on and after June 7, 1954."

The defendant argues that once the contracts were filed, the rates therein took on an independent existence and remained despite destruction of the reason for their existence. Thus although the eleven cents minimum price order and the .055 cent tax have been destroyed by the courts, defendant seeks to sustain the 11.055 cents rate.

It is clear that the Natural Gas Act "evinces no purpose to abrogate private rate contracts as such." United Gas Pipe Line Co. v. Mobile Gas Serv. Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956). The court further was of the opinion that, by requiring the filing of contracts as "rate schedules," the Natural Gas Act recognizes that rates may be set by individual contracts.

We are not dealing here with a statute such as the Interstate Commerce Act where ex parte rates are binding on both parties. The difference is pointed out in the Mobile case, supra, and in United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div., 358 U.S. 103, 79 S.Ct. 194, 3 L.Ed.2d 153 (1958).

An unreported United States District Court decision permitted recovery in a case nearly identical to the present case. Kansas-Nebraska Nat'l Gas Co. v. Pan American Petroleum Corp., Civil No. 0675, D.Neb., March 22, 1960. The court relied upon the Mobile and Memphis cases in its decision and held that the filing of the minimum rate order with the F. P. C. was a unilateral act and therefore void.

The difficulty with this reasoning, however, is that the defendant had no choice but to file the eleven-cent rate. The Kansas Corporation Commission required defendant to collect this rate, and the F. P. C. required him to file the rates being charged on June 7, 1954. This situation does not fit too well into the unilateral rule of the Mobile and Memphis cases.

However, I am of the opinion that the rights and liabilities of the parties have been fixed by their contracts. The contracts control because the F. P. C. order required the filing of the "basic contracts." The Kansas legislature momentarily disturbed the contracts, but now they stand as originally drawn. It follows that the proper rate should be found in these contracts as originally drawn.

The defendant cites Montana-Dakota Utilities Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 251, 71 S.Ct. 692, 95 L.Ed. 912 (1951), as authority for a contrary holding. In that case the court said that plaintiff "can claim no rate as a legal right that is other than the filed rate, whether fixed or merely accepted by the Commission * * *." This statement cannot run as authority, unleashed and without its context.

■ In the Montana-Dakota case, the plaintiff was attempting to have the question of "reasonable" rates adjudicated in the federal court. There is no doubt that only the F. P. C. can determine a reasonable rate, but the plaintiff was trying to distinguish "determination" of the rate from a "legal right" to a reasonable rate and have the latter adjudicated. The court said the two cannot be separated and in the same paragraph made the above quoted statement. Reading the statement in its context, it means that the plaintiff cannot go to the courts to assert his legal right to a "reasonable" rate, which is other than the rate on file.

We now come to the question as to whether a contract for refund existed between Northern and Landon. The United States District Court for the Northern District of Oklahoma has recently ruled on this question. Almost identical facts were there present. The court held that a letter to defendant, stating that the eleven-cent payment was to be made under protest, was an offer to pay on condition of refund. Also, that the acceptance of the checks by defendant with endorsements, similar to the ones in the present case, was acceptance of plaintiff's offer. Cities Serv. Gas Co. v. United Producing Co., D.C., 212 F. Supp. 116.

■■ The Kansas law, which governs this question, is that an unliquidated debt may be discharged by tender and acceptance of a payment conditioned on complete satisfaction of the debt. Neely v. Thompson, 68 Kan. 193, 75 P. 117 (1904). From this authority plaintiff urges that a refund contract can be made by conditioning a payment upon refund in case a certain event happens. An analogous situation is found in Autographic Register Co. v. Philip Hano Co., 198 F.2d 208 (1st Cir.1952), where royalty payments were made upon condition of refund in the event the patents were adjudicated to be infringements.

■ I hold that the letters written by Northern constituted an offer in a contract for refund and that Landon's acceptance of the checks containing reference to the letters was acceptance of the offer. I also hold that the refund contract so arrived at modified and supplemented the original contracts.

■ Next, the defendant defends on the grounds that to the extent plaintiff's claim covers a period of time in excess of three years prior to the commencement of this action, such claim is barred by Kan.G.S.1949, 60–306. The Kansas statute of limitation bars oral contracts after three years and written contracts after five years. Passing over the fact that defendant urges the limitation applicable to oral contracts and not that having to do with written contracts, I believe and hold that the cause of action accrued on January 20, 1958, the date of the United States Supreme Court's decision striking down the Kansas Corporation Commission's minimum price order. This suit was commenced in February of 1959, well within either statute of limitation.

The contract between the parties called for refund in the event the order was adjudicated invalid. Northern had no right to sue for breach of contract until that event occurred. This conclusion was reached by a Delaware court in another similar case to the present one. Cities Serv. Gas Co. v. Western Nat'l Gas Co., Civil No. 674, Super.Ct., New Castle County, Delaware, May 24, 1960.

In view of these holdings, the plaintiff's theory of recovery based on restitution will not be examined. Judgment will be for the plaintiff, and the defendant's counterclaim will be denied for the reasons herein stated.

Pursuant to the stipulation of the parties, evidence will be taken at a time to be fixed by the court for the purpose of determining the amount of the judgment.

Counsel will submit an order.