Eugene **FARMER**

v.

**PHILADELPHIA ELECTRIC CO.**

**Civ. A. No. 32053.**

United States District Court E. D. Pennsylvania.

March 29, 1963.

---

**730**

Norman Shigon, Philadelphia, Pa., for plaintiff.

Thomas A. Masterson, Eugene J. Bradley, Philadelphia, Pa., for defendant.

LUONGO, District Judge.

This is a civil action to recover damages. The complaint alleges that the United States and the defendant entered into a written contract; that the defendant undertook and agreed not to discriminate against any employee because of race, creed, color or national origin; that the anti-discrimination provision of the contract was required by and inserted pursuant to an Executive Order;[1] and that defendant discriminated against the plaintiff in his employment solely because of his race. On the foregoing plaintiff claims the right, as a third party beneficiary, to recover damages for breach of the contract between the defendant and the United States. Before me is the defendant's motion to dismiss (a) for lack of jurisdiction, or (b) for failure to state a claim upon which relief may be granted.

It is possible to interpret the complaint as asserting either (1) a common law action for breach of contract, or (2) a cause of action created by an Executive Order promulgated by the President of the United States. Under either view the complaint must be dismissed.

(a) *Jurisdiction:*

There is no diversity of citizenship between the parties. Plaintiff does not rely on the special statutory basis for federal jurisdiction in civil rights cases contained in 28 U.S.C.A. § 1343. Jurisdiction is claimed solely on the basis that this suit arises under the Constitution and laws of the United States within the meaning of 28 U.S.C.A. § 1331.[2]

It is at once apparent that if the complaint is viewed simply as alleging a common law cause of action for breach of

1. Executive Order 10557, 3 C.F.R. 203 (1954), U.S.Code Cong. and Adm.News 1954, p. 1859.

2. "§ 1331. Federal question; amount in controversy; costs
   "(a) The district courts shall have original jurisdiction of all civil actions where-in the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States."

contract, lack of diversity is a fatal jurisdictional deficiency. Plaintiff seeks to avoid this by contending that the anti-discrimination clause in the contract was mandated by Executive Order, thereby raising the federal question necessary to bring this complaint within the purview of 28 U.S.C.A. § 1331.

The fact that federal "law" may be involved in the interpretation of a contract does not constitute a claim "under the Constitution, laws or treaties of the United States." As stated in Gully v. First Nat. Bank, 299 U.S. 109, at page 112, 57 S.Ct. 96, at page 97, 81 L.Ed. 70, a case relied on by both parties:

"* * * To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. * * *"

Also see Pan Am. Petroleum Corp. v. Superior Court, 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584 (1961); Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950).

Viewing the complaint as stating a cause of action under common law contract principles and applying the test of Gully, the Executive Order does not create a right which is an essential element of plaintiff's cause of action. Plaintiff's right, if any, is dependent on common law contract principles and the Executive Order serves only to explain why the anti-discrimination clause is included in the contract and, perhaps, to shed some light on whether the contracting parties intended to create rights in third persons. Whether plaintiff is a third party beneficiary to the contract between defendant and the United States, whether that contract has been breached, whether and to what extent he will be entitled to recover damages, are all questions to be resolved by the application of common law principles, not by the interpretation of an Executive Order, or "law" of the United States.

The principle was stated thus, under somewhat analogous facts, by Mr. Justice Jackson in Montana-Dakota Utilities Co. v. Public Service Co., 341 U.S. 246, at page 252, 71 S.Ct. 692, at page 695, 95 L. Ed. 912 (1951):

"If the petitioner's grievance arises from active fraud and deceit, it gains nothing from the Federal Act. Such an action would have been maintainable if no Federal Power Act had been enacted. Before the Act, petitioner would have had no statutory right to a reasonable rate, but it did have a common-law right not to be defrauded into paying an excessive or unreasonable one. The Federal Act adds nothing to fraud as an actionable wrong, and, therefore, to find a cause of action of this character would only be to dismiss it for want of diversity."

Paraphrasing Mr. Justice Jackson's expression, it can be said of this case, viewed as a contract claim, that if plaintiff's claim is based on contract principles, it gains nothing from the Executive Order. Such an action would have been maintainable on such a contract if no Executive Order had been promulgated.

The case of Shell v. Schmidt, 126 Cal. App.2d 279, 272 P.2d 82 (1954) cited by plaintiff does not require a contrary result. In that case plaintiffs elected to forego a specially created federal statutory cause of action (on which the Statute of Limitations had expired) in favor of a common law contract action in the state court. In the instant case I do not question plaintiff's claim as a third party beneficiary under common law contract principles, he is perfectly free to make such a claim, but if he does so he may not make it in this court because of the absence of diversity of citizenship between him and the defendant.

Viewing the complaint, therefore, as stating a claim under common law contract principles would require the conclusion that this court has no jurisdiction.

As stated earlier, however, it is *possible* to construe the complaint, not as one based on common law contract principles, but as claiming a cause of action created by an Executive Order. Under this latter view, applying the principles enunciated in Montana-Dakota Co. v. Pub. Serv. Co., supra, [and see Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946)] plaintiff manages to get over the jurisdictional hurdle, for simply by asserting that he has a cause of action under a "law" of the United States, he has created jurisdiction in this court to determine whether such a claim is well founded, but by doing so he has created a problem for himself as to whether he can set forth a cause of action.

(b) *Failure to state a claim:*

■ For the purpose of this aspect of defendant's motion, I will assume that the Executive Order in question has the force of law and the discussion hereinafter will be predicated on that assumption.[3] Plaintiff's burden then is to show that a private cause of action was created for the redress of the discrimination practiced against him. No such private right or cause of action is expressly granted or referred to by the words of the Executive Order in question.

A review of anti-discrimination executive orders from 1941 to 1963,[4] their history [5] and finally the enabling legislation on which they were based [6] reveals, likewise, no reference to private rights or private causes of action for or on behalf of persons subjected to discrimination in employment. By way of contrast, when Congress has created private rights and private causes of action it has done so clearly, in express language, defining the measures of recovery, as in the Civil Rights Act [7] and other legislation.[8] There is no such express grant of private rights here.

---

3. Because I think the language of the executive orders and the enabling legislation evidences no intention to create private rights, it is unnecessary to consider the serious constitutional problems inherent in the attempted creation of such rights by the executive branch of government.

4. Executive Order 8802, 6 F.R. 3109 (1941), U.S.Code Cong.Service 1941, p. 860; Executive Order 9001, 6 F.R. 6787 (1941) U.S.Code Cong.Service 1941, p. 992; Executive Order 10557, 3 C.F.R. 203 (1954), U.S.Code Cong. and Adm. News 1954, p. 1859; Executive Order 10925, 3 C.F.R. 86 (1961 Supp.).

5. E.g., the executive orders of 1941 supra were intended primarily to promote the national defense and war effort by insuring the maximum use of the country's manpower.

6. E.g., legislation dealing with the war effort, 50 U.S.C.A.Appendix, §§ 601 et seq.; legislation dealing with procurement, 40 U.S.C.A. § 486; and legislation dealing with appropriations, 31 U.S.C.A. § 691.

7. In the Civil Rights Act, 42 U.S.C.A. § 1983, Congress expressly created a private cause of action in those persons who are deprived of their civil rights.
   "1983. Civil Action for deprivation of rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."
   In 28 U.S.C.A. § 1343 the district courts were expressly given jurisdiction of private civil actions brought under the Civil Rights Act.

8. See also, 15 U.S.C.A. § 15 (private right of action under the anti-trust laws); 29 U.S.C.A. § 216 (civil action by employees to recover minimum wages and overtime compensation); 29 U.S.C.A. § 412 (civil action by employees for violation of rights under Labor-Management Reporting and Disclosure Act); 45 U.S.C.A. § 51 (liability of railroad to injured or deceased employees); 17 U.S.C.A. § 101 (private right of action for infringement of copyright); 46 U.S.C.A. § 688 (pri-

The remaining question is whether a private right of action may be implied from the executive orders. Plaintiff has cited several cases [Fitzgerald v. Pan American World Airways, Inc., 229 F.2d 499 (2nd Cir., 1956); Reitmeister v. Reitmeister, 162 F.2d 691 (2nd Cir., 1947); Wills v. Trans World Airlines, Inc., 200 F.Supp. 360 (D.C.S.D.Calif. 1961)] in support of his contention that a private right was created by implication. Those cases are of very little assistance to him since they are based upon the recognized principle that when conduct is declared criminal for the protection of a specified class of persons, there is created, by implication, a civil right of action for an offended member of the class. The conduct complained of by defendant has not been made criminal, although other conduct violative of civil rights has been.[9] Absent legislation declaring such conduct criminal, therefore, plaintiff cannot rely on the above enunciated principle to support a private civil right of action.

As additional support for his claim that a private right of action was impliedly created, plaintiff argues that to deny such private right would render "the anti-discrimination clause in government contracts * * * meaningless * * *" This is not so. The administrative procedures established by the series of executive orders to combat discrimination evidence an intent to forego private vindication of rights by the injured party[10] for administrative procedures designed to accomplish the desired objective by economic pressure and by conciliation.

As early as 1941 [Executive Order 8802, 6 F.R. 3109 (1941)] there was established in the Office of Production Management a Committee on Fair Employment Practice whose duties included receiving and investigating complaints of discrimination, taking steps to redress grievances, and recommending to government departments and agencies appropriate measures to assure nondiscrimination. Such administrative powers, implemented by a succession of executive orders, culminated in Executive Order 10925, March 7, 1961, 3 C.F.R. 86 (1961 Supp.). In this latter Order the policy of requiring non-discrimination clauses in government contracts was reiterated. and a Committee on Equal Employment Opportunities was created. In addition to its duty to investigate complaints of discrimination, the Committee was empowered to employ economic sanctions[11] and conciliation procedures in an effort to effectuate the aim of the executive orders.

The constant revision, extension and implementation of administrative procedures to eliminate discrimination by government contractors leads me to con-

---

vate right of action for causing injury or death of seaman); 33 U.S.C.A. § 901 et seq. (private right of action for causing injury or death to longshoreman or harbor worker); 47 U.S.C.A. § 13 (private right of action against telegraph company); 47 U.S.C.A. § 207 (recovery of damages against a common carrier).

9. 18 U.S.C.A. § 241 (conspiracy against rights of citizens); § 242 (deprivation of rights under color of law).

10. The 1953 Report of the President's Committee on Government Contract Compliance as discussed in Pasley, the Non-Discrimination Clause in Government Contracts, 43 Va.L.Rev. 837 (1957) supports this view. At page 855, Pasley states:
"The 1953 Report discusses the possibilities of (i) suit by the injured employee or applicant on the theory of third-party beneficiary, or (ii) a specific contract clause conferring third-party beneficiary rights on employees and applicants, or (iii) requiring a certificate of compliance with the nondiscrimination clause as a condition precedent to final payment under the contract. For various reasons the Report recommends against each of these. They have not been adopted and they need not detain us further."

11. E.g., publishing a list of non-complying contractors; recommending to Department of Justice suits for violations of contractual provisions; terminating contracts for failure to comply; prohibiting further contracts with non-complying contractors.

clude that the executive intention was only to create administrative remedies for non-compliance, not private causes of action.

The situation in which plaintiff finds himself is not unlike that of the plaintiff in Montana-Dakota Co. v. Public Service Co., supra, whose problem, as stated by Mr. Justice Jackson, was "to avoid Scylla without being drawn into Charybdis." If he relies on a "good" cause of action (common law cause of action based on contract) he founders on the jurisdictional rocks. In avoiding the jurisdictional rocks he must rely on a theory (federal question based on Executive Order) which draws him into the whirlpool of failure to state a cause of action. The plaintiff did not survive the perilous voyage in the Montana-Dakota case, nor has plaintiff in this one.

Defendant's motion to dismiss the complaint will be granted.