738

INTERSTATE COMMERCE COMMIS-
SION, Plaintiff,

v.

MILK PRODUCERS MARKETING
COMPANY et al., Defendants,

National Motor Freight Traffic Associa-
tion, Inc., Regular Route Common Car-
rier Conference, and Common Carrier
Conference-Irregular Route, Interve-
nors.

Civ. A. No. T-4435.

United States District Court,
D. Kansas.

Dec. 14, 1970.

Harry F. Horak and J. F. Walker, Fort
Worth, Tex., Bernard A. Gould, Bureau
of Enforcement, Washington, D. C., Rob-
ert Roth, U. S. Atty., Topeka, Kan., for
plaintiff.

Warren H. Sapp, III, Tom B. Kret-
singer, Kansas City, Mo., Robert H.
Bingham, Kansas City, Kan., for defend-
ants.

John E. Jandera, Topeka, Kan., Theo-
dore Polydoroff, John R. Bagileo, of Rea,
Cross & Knebel, Washington, D. C., for
intervenors National Motor Freight
Traffic Assn.

## ORDER ON MOTION TO MODIFY INJUNCTION

TEMPLAR, District Judge.

On October 8, 1968, this Court entered
a judgment of restraint and injunction,
the pertinent portion of which reads as
follows:

"IT IS, THEREFORE, ORDERED,
ADJUDGED AND DECREED that
the defendants Milk Producers Market-
ing Company, William Cecil Jenkins,
Ralph Kapke, James Ellis and Art
Warren, and each of them, their
agents, employees and representatives,
in active concert or participation with
them, be, and they are hereby, perma-
nently enjoined and restrained from

transporting property, except as otherwise exempt under 49 U.S.C.A. 303(b) (6), for nonmembers by motor vehicle over public highways as for-hire, common or contract carriers by claiming the 'agricultural cooperative exemption' of Title 49 U.S.C.A. 303(b) (5), unless said transportation of nonmembership, nonexempt shipments is coordinated with membership shipment in the reverse direction, or unless there is in force with respect to said defendants certificates of public convenience and necessity or permits issued by the Interstate Commerce Commission authorizing such transportation."

From this judgment, an appeal was taken by defendants and the same was affirmed. ICC v. Milk Producers Marketing Co., 405 F.2d 639 (10th Cir.).

On August 10, 1970, the defendant filed its motion to reopen and clarify judgment of injunction in which it alleges that:

"(1) The referred to judgment of this Court prohibits defendant from engaging in certain transportation activities by motor vehicle 'unless there is in force with respect to said defendants certificates of public convenience and necessity * * * issued by the Interstate Commerce Commission authorizing such transportation. * * *'

"(2) Defendant Milk Producers Marketing Company has in all ways complied with the terms of said judgment, since receipt of the notice of the mandate of the Court of Appeals;

"(3) By order of December 2, 1969, plaintiff Interstate Commerce Commission, by its Motor Carrier Board, approved the application of defendant, as transferee, to purchase a certain certificate of public convenience and necessity, issued by said Commission to one Bilyeu Refrigerated Transport Corp., a Missouri Corporation; said proceeding before the plaintiff Commission bears Commission docket no. MC–FC–71792;

"(4) Said order of the Motor Carrier Board was stayed pending determination of certain issues raised by several parties alleging an interest in said proceeding, including the intervening plaintiffs herein; by reason of said stay, defendant applied for and was on January 16, 1970, granted temporary authority to lease the aforesaid certificate pending final decision of those issues; said application was unopposed; defendant is now conducting operations pursuant to said certificate, as well as engaging in the transportation of commodities exempted by section 203(b) (6) of the Interstate Commerce Act, 49 U.S.C. § 303(b) (6);

"(5) The intervening plaintiffs herein have opposed the issuance by plaintiff Commission of said certificate to this defendant, on grounds *inter alia* that defendant is a cooperative association and, as a matter of law, plaintiff Commission is barred from issuing, and defendant is prohibited from receiving, such certificate, by virtue of Public Law 90–433, which was incidentally discussed but not considered by this Court herein;

"(6) The facts and law respecting defendant's transportation activities have changed sufficiently to warrant the modification and clarification of the Court's judgment herein, first to determine and clarify the right of defendant, as a cooperative association otherwise qualified, to receive and hold a certificate of public convenience and necessity issued by the plaintiff Commission; second, to determine and clarify the right of defendant to hold, and conduct operations pursuant to, the aforesaid temporary authority; and third, to determine and clarify said judgment with respect to the scope of permissible exempt operations in conjunction with said temporary authority, and, in the event such certificate should be issued to defendant in conjunction therewith."

The prayer of the motion contains a statement of the issues attempted to be raised by defendant. It reads:

"WHEREFORE, defendant Milk Producers Marketing Company respectful-

ly moves the Court to reopen its judgment herein to clarify and modify the same to reflect whether or not defendant may, as a cooperative association within the meaning of 49 U.S.C. § 303 (b) (5) and Public Law 90–433, and otherwise qualified, receive and hold a certificate of public convenience and necessity issued by plaintiff Commission, and if so, the permissible scope of exempt operations which it may conduct in connection therewith."

In substance, the case grew out of the following facts: Defendant is an agricultural cooperative corporation, maintaining a "dairy fleet" of motor vehicles which are used in connection with the dairy phases of its operations. In addition to the vehicles used by it in its "dairy fleet," it maintained a separate fleet of trucks, not owned by it but leased from others, which it operated under what it designated as its transportation division.

In its milk and dairy operations, Milk Producers has a dairy fleet of motor vehicles which handles the products of members within a limited area, chiefly Kansas and a portion of Missouri. The transportation division operation covers extensive for-hire transportation of general commodities for nonmembers throughout the United States. The dairy fleet and the vehicles of the transportation division are operated separately and independently. Separate offices and accounts are maintained for the transportation division which operates under the control and direction of Milk Producers. The business done by the transportation division has not exceeded in value the total amount of business done by Milk Producers with its members.

The Court is inclined to agree with plaintiff's contention that a reading of the full injunction order clearly indicates that defendant can perform the following types of operations without being in violation of such injunction:

1. Transportation of membership traffic,

2. Transportation of 49 U.S.C. § 303 (b) (6) exempt traffic,

3. Transportation of nonexempt, nonmember traffic under the 49 U.S.C. § 303(b) (5) exemption only if such is coordinated with membership shipments in the reverse direction, and

4. Transportation of nonexempt, nonmembership traffic if defendant obtains appropriate authority.

Factually, it appears that following the affirmance of this Court's judgment by the Court of Appeals, as stated in paragraph 4 of defendant's motion (supra), the plaintiff, by its order of January 16, 1970, granted temporary authority to defendant to lease the certificate held by Bilyeu Transportation Company under which defendant is now conducting operations pursuant thereto, pending the determination of defendant's application, as transferee, to purchase the certificate of convenience and necessity of Bilyeu. The application for transfer is opposed before the ICC by the intervenors named in the caption herein, together with Tri State Motor Transit Company, and defendant's application before this Court is opposed by the same intervenors.

The intervenors advance the proposition that a cooperative association qualifying under the Agricultural Marketing Act may not receive a certificate of public convenience and necessity issued by the plaintiff Commission, and may not lawfully operate as a carrier thereunder.

The urgency of an early determination as it bears upon the present operations of defendant is apparent. Defendant simply says that should the contention of intervenors be sustained, then defendant will become liable for an adjudication of contempt for violating the Court's injunction and be subject to punishment for such a violation. Defendant insists that this Court should modify its injunction to avoid its being caught in such a predicament should the ICC finally uphold the intervenors' contention that under the law, defendant is ineligible to hold a certificate which it now seeks to have transferred to it by authority of the Commission.

The fears of defendant are understandable but its apprehension should be relieved when the Court's judgment is examined and interpreted in the light of circumstances existing when it was entered. The judgment simply was intended to prohibit the back-to-back hauling of general commodities of nonmembers by motor vehicles on a for-hire basis "unless there is in force with respect to said defendant's certificates of public convenience and necessity or permits issued by the Interstate Commerce Commission authorizing such transportation."

The record before me discloses that a permit has been issued in the form of a temporary authority to lease the Bilyeu certificate pending the final determination by ICC of whether to approve defendant's application to purchase and receive such certificate. The plaintiff likewise has taken the position in its brief (p. 14, Doc. 50) that defendant may, without being in violation of the injunction, transport nonexempt, nonmembership traffic if it obtains appropriate authority.

And so the proposition to be resolved is one of jurisdiction to decide the question of whether an agricultural cooperative association is prohibited by law from receiving and holding a certificate of public convenience and necessity issued by the ICC, or transferred to it by the Commission's authorization.

Plaintiff concedes that this Court has inherent power to vacate, modify or otherwise alter injunctions issued by it, but insists that defendant is seeking, in effect, a declaratory judgment on the issue presented rather than the opening or modification of the Court's original decree. The Court of Appeals for the Tenth Circuit has recently furnished guidelines for a trial court to consider, when asked to modify an injunction, in the case of Ridley v. Phillips Petroleum Company, 427 F.2d 19, where it was said at page 22:

"Accepting the findings of fact made by the court below in the equitable action, since there appears no obvious error, we come to the court's first conclusion, namely, that the facts do not justify dissolution of the injunction. The guidelines for modifying or dissolving an injunction were clearly set out by the Supreme Court of the United States in United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, and recently restated by the Eighth Circuit in Humble Oil & Refining Co. v. American Oil Co., 405 F.2d 803 (8th Cir.). These two cited cases hold that where a modification of an injunctive decree is sought the court should determine 'whether the changes are so important that dangers, once substantial, have become attenuated to a shadow,' and it must be shown that the moving party is exposed to severe hardships of extreme and unexpected nature. Thus the requested change should be approached with caution and a strong showing is required of new conditions and circumstances making the original injunction oppressive."

The plaintiff also raises the matter of "primary jurisdiction" and "exhaustion of remedies." In United States v. Western Pac. R. Co., 352 U.S. 59, at page 63, 77 S.Ct. 161, at page 165, 1 L.Ed.2d 126, the Supreme Court said:

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the ad-

ministrative body for its views. General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 433 [60 S.Ct. 325, 331, 84 L.Ed. 361].

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. See Texas & Pacific R. Co. v. Abilene Cotton Oil Co., 204 U.S. 426 [27 S.Ct. 350, 51 L.Ed. 553]. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed. See Far East Conference v. United States, 342 U.S. 570 [72 S.Ct. 492, 96 L.Ed. 576]."

■ The doctrine of primary jurisdiction is not rigid, but flexible, and the Court is not without discretion in its application. Where rights may be saved by retaining a cause, the Court should do so, but stay its hand pending administrative determination of matters particularly within the agency's jurisdiction, and courts have been held to have properly suspended proceedings to enable the administrative agency to pass on the question involved. 2 Am.Jur., Title Administrative Law, § 796, p. 700.

The Court has carefully examined the excellent briefs submitted by the parties and their oral arguments, and gives consideration to the reasons advanced for permitting matters, once in the hands of an administrative body, to be determined by them since it may be assumed these administrative bodies are better equipped with the expertise and facilities to do so than are the courts.

■ At the same time, the doctrine of primary jurisdiction has no application where only a question of law is involved. Great No. Ry. v. Merchants Elevator Co., 259 U.S. 285, 294, 42 S.Ct. 477, 66 L.Ed. 943, approved in Pan Am. Petroleum Corp. v. Superior Court, 366 U.S. 656, 665, 81 S.Ct. 1303, 6 L.Ed.2d 584. Since the defendant submitted the application for transfer of the certificate to it because the applicable statutes require this procedure to be followed before the ICC, this Court believes the administrative agency should make the initial decision and while the Court will not attempt to render an advisory opinion, it must observe that there is no statute or controlling court decision which prohibits an agricultural cooperative association from acquiring a certificate of convenience and necessity, if otherwise qualified.

■ This Court concludes that, under all the circumstances, it should stay its hand pending the Commission's determination of whether the defendant may hold a temporary authority to lease a certificate of convenience and necessity from the owner when defendant has a contract to acquire the certificate by purchase, and conversely whether plaintiff may issue or authorize the transfer of a certificate to a qualified cooperative association, either on a temporary or permanent basis.

These are questions of law which could be decided by this Court but since the matter is pending before the Commission, proceedings before the Court will be stayed until these issues are determined by the ICC, or until the further order and direction of the Court.

It is so ordered.